# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Jerry Britt, Michael Fisher, James Green, Michael James, Mike Rawlings, Danny Rose, Leonard Simpson, Mark Humphrey, Terry Torix, Dennis Whitman, and Bobby D. Bailey,<br><br>    Plaintiffs,<br><br>v.<br><br>CP KELCO U.S., INC.,<br><br>    Defendant. | Case No. CIV-09-436-RAW |

## ORDER & OPINION

Before the court is the motion for summary judgment filed by Defendant, CP Kelco U.S., Inc. (hereinafter "CP Kelco") [Docket No. 52]. Also pending are CP Kelco's motions in limine [Docket Nos. 54 and 55], CP Kelco's motion to deem its motion for summary judgment confessed [Docket No. 58], Plaintiffs' motion to extend the deadlines of the scheduling order [Docket No. 62], and Plaintiffs' motion for summary judgment [Docket No. 68].

For the reasons set forth below, CP Kelco's motion for summary judgment is GRANTED. CP Kelco's motions in limine, CP Kelco's motion to deem its motion for summary judgment confessed, and Plaintiffs' motion to extend the deadlines of the scheduling order, therefore, are MOOT. Plaintiffs' motion for summary judgment is DENIED.

**DOCKET HISTORY**

CP Kelco filed its summary judgment motion on May 17, 2010. Responses to CP Kelco's summary judgment motion were due by June 1, 2010. Plaintiffs did not timely respond to the motion, nor did they file a motion for an extension of time to respond to the motion. Instead, on June 7, 2010, Plaintiffs filed a motion to continue the settlement conference, arguing that their work in responding to the summary judgment motion had prevented them from preparing for the settlement conference.[1] Understandably, given that the response date had come and gone without a request for an extension or any other word from Plaintiffs, CP Kelco expressed its surprise at this argument. The court was also surprised.

Also on June 7, 2010, CP Kelco filed its motion to deem its summary judgment motion confessed. On June 8, 2010, Plaintiffs filed their response to CP Kelco's motion to deem its motion for summary judgment confessed, arguing that they "just needed more time, and [were] in the process of seeking that additional time." The court is unsure what steps Plaintiffs had taken toward seeking additional time, but they did not include the essential step of filing a motion before this court.[2]

---

[1]CP Kelco filed its response to this motion on the same day.

[2]Plaintiffs also stated "Defendant expected Plaintiffs to remain bound by the strict time frame of twenty (20) days for filing their response . . . ." In fact, the court expects all parties to remain bound by all filing deadlines unless they properly, *i.e.* in accordance with the Rules, request an extension of time. The court is unsure how Plaintiffs' counsel arrived at a twenty (20) day response deadline, but refers counsel to Local Civil Rule 7.1(f) which sets the response deadline at fourteen (14) days. In any event, even a twenty (20) day response deadline would have passed on June 7, 2010.
   Additionally, on the last page of their response to the motion to deem the summary judgment motion confessed, Plaintiffs included a motion to strike CP Kelco's motion for summary judgment or in the alternative to "adjust the time allowed to respond" to the motion. Plaintiffs' motion was open ended; it did not even ask for a specific response date. Local Civil Rule 7.1(c) provides in pertinent part that "[e]ach motion, application, or objection filed shall be

On June 10, 2010, Plaintiffs filed a motion to extend the deadlines of the scheduling order, complaining again about the difficulty of responding to the seventy-three (73) page[3] summary judgment motion and accusing CP Kelco of playing a "technicality game." Plaintiffs had still not filed a proper request for an extension of time to respond to the summary judgment motion. Within this motion, Plaintiffs simply requested a new scheduling order complete with a July 26, 2010 trial date. Additionally, while the court is aware that CP Kelco had previously indicated that it would oppose a motion for an extension of time to respond to the summary judgment motion, Plaintiffs did not comply with Local Civil Rule 7.1(g).[4]

Also on June 10, 2010, CP Kelco submitted the Proposed Pretrial Order without any input from Plaintiffs despite its failed attempts to collaborate with them. CP Kelco informed the

---

a <u>separate pleading</u>." Moreover, Local Rule 7.1(j) requires all motions for extension of time to be made <u>before</u> the original expiration of time. To the extent that these were intended to be separate motions within the response, they are denied.

Furthermore, the court is unconvinced by Plaintiffs complaints about the difficulty in responding to CP Kelco's seventy-three (73) page motion. Fifty (50) of those pages are, as the court notes below, clear and concise statements of fact and citations to the evidence. The legal analysis portion of the motion is fairly simple and easy to follow. The exhibits are documents Plaintiffs should have had well before the summary judgment motion was filed, including depositions of the Plaintiffs themselves, the agreement between CP Kelco and Plaintiffs' union, call-in records and time sheets.

[3]In a joint application, Plaintiffs had previously agreed upon a seventy-five (75) page limit on the summary judgment motion. In that same application, they also requested a seventy-five (75) page limit on the response, but did not include anything regarding an extension of the response time because of the additional pages.

[4]Local Civil Rule 7.1(g) states that the court will refuse to hear any motion unless counsel for the movant first advises the court in writing that he or she has personally met and conferred in good faith and, after a sincere attempt to resolve differences, has been unable to reach an accord. Counsel may meet and confer by telephone when the distance between counsels' offices renders a personal conference infeasible. Rule 7.1(g) further states: "When the locations of counsels' offices, which will be stated with particularity by movant, are in the same city or within thirty (30) miles of each other, a personal conference is always deemed feasible as to distance." The court strongly believes that such conferences are always in the best interests of the parties.

court that Plaintiffs' counsel failed to respond to CP Kelco's requests on June 2 and June 9 for their portion of the Proposed Pretrial Order.

Local Civil Rule 7.1(h) provides:

> If a dispositive motion is not opposed, the Court may in its discretion either (1) provide an additional fourteen (14) days, after which the case will be dismissed or the motion will be deemed confessed, as appropriate, or (2) in the event the moving party has filed a motion for confession of judgment, such motion may be granted following fourteen (14) days after filing. In either event, in the discretion of the Court, the party failing to respond shall be subject to sanctions, including but not limited to all attorney fees and costs incurred by the moving party in connection with such failure to timely oppose the motion.[5]

Moreover, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

Since CP Kelco filed a motion to deem its motion for summary judgment confessed, the court could have waited fourteen (14) days and then deemed the motion for summary judgment confessed. Instead, because the very clear and concise facts submitted by CP Kelco were backed by citations to the evidence and the law is clear, the court decided to grant the summary judgment motion on the merits. The court decided not to wait any longer for the response Plaintiffs claimed they were planning to file at some unspecified point in time. On June 11, 2010, therefore, the court entered a minute order granting CP Kelco's summary judgment motion with the written order to follow.

---

[5]"General Order 09-05 Amendments - Civil & Criminal Local Rules," entered November 30, 2009 amends Local Civil Rule 7.1(h) at (1) and (2) by striking "eleven (11) days" and inserting "fourteen (14) days."

The court had a change of heart, however, and on June 16, 2010, vacated its June 11, 2010 minute order. The court gave Plaintiffs until June 24, 2010 to file their response to the summary judgment motion. Plaintiffs finally filed their response on June 22, 2010, twenty-one (21) days after the original deadline and thirty-five (35) days after the motion was filed. Plaintiffs included within their response a "counter motion for summary judgment."[6] On July 6, 2010, CP Kelco filed its reply to its summary judgment motion and response to the counter motion. Nothing has been filed in this case since.

Although it may seem as such, the court has not included this section to impugn Plaintiffs. Rather, the court simply includes this section for the obvious purpose of laying out the history of the case and to gently admonish Plaintiffs' counsel that the Federal Civil Rules and the Local Civil Rules should be followed.[7]

## CP KELCO'S SUMMARY JUDGMENT MOTION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

---

[6]As the court noted above, Local Civil Rule 7.1(c) provides in pertinent part that "[e]ach motion, application, or objection filed shall be a <u>separate pleading</u>."

[7]Additionally and along the same vein, the court notes that it shared CP Kelco's frustration with Plaintiffs' failure throughout this litigation to disclose to CP Kelco and to the court the amount of their claimed damages. On January 28, 2010, the court ordered Plaintiffs to supplement their disclosures and to specify exactly <u>how much</u> they are requesting in damages by February 16, 2010. On February 15, 2010, Plaintiffs filed their amended disclosures and stated that they could not determine their exact damages. They would not even offer a ballpark figure.
    In their response to the motion for summary judgment, Plaintiffs finally stated that with the details provided by Defendant, <u>the court</u> could "make the necessary mathematical calculation needed for determining the amount of back-pay wages due each of the employee-Plaintiffs." The court notes that because of Plaintiffs' failure to provide this information pursuant to Rule 26 of the Federal Rules of Civil Procedure, if the court were not granting CP Kelco's summary judgment motion, it would be inclined to grant CP Kelco's second motion in limine requesting that the court preclude any testimony pertaining to Plaintiffs' damages.

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. <u>Burke v. Utah Transit Auth. & Local 382</u>, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, Plaintiffs may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of their complaint. <u>Id</u>.

## UNDISPUTED MATERIAL FACTS

CP Kelco included within its motion two hundred and seven (207) statements of fact. Each statement of fact is accompanied by citations to evidence, including: the Declaration of Trey Glidden (Exh. No. 2); the Maintenance Department Call-In Policy (Exh. Nos. 3-6); Fisher's Deposition (Exh. No. 7); Rose's Deposition (Exh. No. 8); Wittman's Deposition (Exh. No. 9); James' Deposition (Exh. No. 10); Green's Deposition (Exh. No. 11); Torix's Deposition (Exh. No. 12); Britt's Deposition (Exh. No. 13); Humphrey's Deposition (Exh. No. 14); Rawlings' Deposition (Exh. No. 15); Simpson's Deposition (Exh. No. 16); Bailey's Deposition (Exh. No. 17); a portion of John LaChance's testimony at arbitration (Exh. No. 18); the Agreement between CP Kelco and the Union (Exh. Nos. 19-20); Call-In Records (Exh. Nos. 21-24); the Declaration of Sidney Lewis (Exh. No. 25); the Declaration of David Casey (Exh. No. 26); Time Sheets (Exh. Nos. 27-37); and the Declaration of Bruce Digby (Exh. No. 38).

Each of CP Kelco's statements of fact is clear and concise, is properly supported by the cited evidence, and provides factual information only without argument or conclusions of law. In their response, Plaintiffs state that they "for the most part adopt most of the facts enumerated

by Defendant, except that most of them (Def's Brief pp 5-55) are neither material nor relevant."

Plaintiffs do not dispute the accuracy of any of the statements of fact. They do not submit any additional evidence that contradicts any of CP Kelco's statements of fact. Plaintiffs merely state that some of the statements of fact are not material or relevant.[8] The court disagrees. CP Kelco's statements of fact are material and relevant in deciding the summary judgment motion, as will become more clear below.

Accordingly, the court adopts each of the 207 facts listed by CP Kelco. Of course, for purposes of ruling on CP Kelco's summary judgment motion, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to Plaintiffs.

## ANALYSIS

Plaintiffs filed this action claiming that CP Kelco violated their rights under the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. § 201, *et. seq*., when it "implemented a mandatory pager, call-in policy" requiring maintenance mechanics to carry pagers while off-duty and to return to work if paged, subject to discipline for failure to respond. They claim that the time off-duty employees were required to wear pagers is "work time" under the FLSA. Plaintiffs maintain they are entitled to pay, including overtime pay for any hours worked over forty (40) in a given week, for the time they wore the pager.

CP Kelco argues that the time Plaintiffs spent wearing the pagers under the Call-In Policy

---

[8]Plaintiffs "accept" facts 1-11, but state that not all of them are material statements. Plaintiffs do not specify which are not material. Plaintiffs do not dispute, but state that facts 13-20, 24-25, 28-38, 107-205 are immaterial or irrelevant. They state that facts 206 and 207 should not be given any weight. Within the fact number range of 52-106, Plaintiffs point out that some that they "specifically" accept, but do not mention whether they believe the others are immaterial or irrelevant.

7

is not compensable "work" under the FLSA. The court agrees. In Pabst v. Oklahoma Gas & Electric Co., 228 F.3d 1128 (10th Cir. 2000), the Tenth Circuit "again explore[d] the question of when 'on-call' time becomes sufficiently onerous to render it compensable" under the FLSA. Id. at 1130. As the Tenth Circuit notes, "[t]he FLSA does not explicitly address the issue of on-call time. Courts, however, have developed a jurisprudence of on-call time, based on . . . Supreme Court cases. . . ." Id. at 1132. "Those cases determine the relevant inquiry to be whether an employee is 'engaged to wait' or 'wait[ing] to be engaged,' . . . or, alternatively, whether on-call time is spent pre-dominantly for the benefit of the employer or the employee." Id. (citation omitted).

In making the determination, the court must consider: (1) the agreement between the parties; (2) the nature and extent of the restrictions placed on the employee; (3) the relationship between the services rendered and the on-call time; (4) all surrounding circumstances; and (5) the degree to which the burden on the employee interferes with his or her personal pursuits. As to the fifth consideration, the court must consider the following relevant factors: (a) the number of calls; (b) the required response time; and (c) the ability to engage in personal pursuits while on-call. Id.

Of course, "the inquiry is highly individualized and fact-based." Id. (emphasis added). The court, therefore, will first review the facts of a few precedential Tenth Circuit cases, including those in Pabst, before discussing the particular facts involved in the case now before the court.

**Pabst Facts**

The plaintiffs in Pabst were on-call to monitor OG&E building alarms from 4:30 p.m. to

8

7:30 a.m. on weekdays and twenty-four (24) hours a day on weekends. Id. at 1131. The plaintiffs were essentially on-call "during *all* of their off-premises time." Id. at 1135. The alarms went to computers and pagers. Id. at 1131. The pagers were unreliable, so the plaintiffs were forced to remain at or near their home to check their computers. Id. The plaintiffs were required to respond to the alarms within ten or fifteen minutes or they could be disciplined. Id. The plaintiffs in Pabst "received an average of three to five alarms per night, not including pages for security issues." Id. It took "an average of forty-five minutes to respond to each alarm." Id.

A rotational schedule for on-call duty would not have been feasible given "the frequency of the alarms and plaintiffs' differing areas of expertise." Id. The plaintiffs in Pabst complained of severely disrupted sleep habits and rarely getting more than five (5) hours of uninterrupted sleep due to the frequency of the alarms. Id. at 1131 and 1134. Moreover, even during the day, the Pabst plaintiffs were "unable to pursue many personal activities while on-call because of the need to come into their homes to check their computers every fifteen minutes." Id.

Applying Tenth Circuit precedent to the facts of the Pabst case, the Pabst court found that the plaintiffs' on-call hours were compensable under the FLSA. The on-call time was spent predominantly for the benefit of OG&E. Ultimately, the Pabst court found that the facts of that case were most analogous to the facts in Renfro v. City of Emporia, 948 F.2d 1529 (10th Cir. 1991).

**Renfro Facts**

In Renfro, the plaintiffs, firefighters, were required to "report to the stationhouse within twenty minutes of being paged or be subject to discipline." Pabst, 228 F.3d at 1134 (quoting

9

Renfro, 948 F.2d at 1535). They were on-call for twenty-four (24) hour periods. Id. They received "as many as 13 calls during an on-call period, with a stated average frequency of 3-5 calls per on-call period." Id.

The on-call time in Renfro was compensable under the FLSA. The on-call time was compensable "despite the fact that the firefighters 'had participated in sports activities, socialized with friends and relatives, attended business meetings, gone shopping, gone out to eat, babysitted, and performed maintenance or other activities around their home.'" Id. at 1135. The on-call time was compensable despite these facts because the firefighters were "on call for 'six shifts of twenty-four hours each in a 19-day cycle.'" Id. (quoting Renfro, 948 F.2d at 1531). "The frequency of the call backs in [Renfro] was a pivotal factor in [the Tenth Circuit's] determination that the firefighters' on-call time was compensable." Gilligan v. City of Emporia, 986 F.2d 410, 412 (10th Cir. 1993).

**Noncompensable Cases**

Conversely, the Tenth Circuit found that the on-call time in the following cases was not compensable under the FLSA: Andrews v. Town of Skiatook, 123 F.3d 1327 (10th Cir. 1997); Gilligan, 986 F.2d 410; Armitage v. City of Emporia, 982 F.2d 430 (10th Cir. 1992); Boehm v. Kansas City Power & Light Co., 868 F.2d 1182 (10th Cir. 1989) ; Norton v. Worthen Van Serv., Inc., 839 F.2d 653 (10th Cir. 1988). Of course, "[c]ounting published cases . . . is meaningless in resolving a fact-intensive question such as the compensability of on-call time. Rather, the proper question is which case is most analogous." Pabst, 228 F.3d at 1134. The case currently before this court is more analogous to the cases finding the on-call time not compensable.

**<u>Andrews Facts</u>**

In <u>Andrews</u>, the plaintiff, an Emergency Medical Technician (hereinafter "EMT"), "worked four twelve-hour shifts per week, for which he was compensated. He was on-call during four twelve-hour shifts per week, for which he was not compensated." <u>Andrews</u>, 123 F.3d at 1328. "Every third week, Andrews was required to work five on-call shifts." <u>Id</u>. at 1328 n.1. The EMTs were allowed to trade their on-call shifts. <u>Id</u>. at 1329. While on-call, Andrews was to monitor a pager. <u>Id</u>. The town of Skiatook has two emergency ambulances. <u>Id</u>. The first is staffed by two EMTs on duty. <u>Id</u>. The second is staffed by two on-call EMTs. <u>Id</u>.

While on-call, Andrews would receive a page when the first ambulance was dispatched to let him know of the increased likelihood of being summoned, and of course, he would receive a page if he was summoned. <u>Id</u>. While on-call, Andrews was not required to report in a uniform. <u>Id</u>. He was, however, required to remain clean and appropriately attired, to refrain from consuming alcohol, and to respond to a page within a reasonable period of time. <u>Id</u>.

Some evidence was presented that the town "required on-call EMTs to respond and be physically moving in the second ambulance within five (5) minutes of receiving a page for a second run. <u>Id</u>. No official policy stated such a requirement. <u>Id</u>. Andrews made seventy-six (76) runs during his approximately two years of employment with the town. <u>Id</u>. His average response time was 4.84 minutes. <u>Id</u>. His response time ranged from zero (0) minutes to thirteen (13) minutes. <u>Id</u>. at 1330. He was never disciplined for response time in excess of five (5) minutes. <u>Id</u>.

Andrews was only compensated if he was called out on a run, and then he was compensated for a minimum of two (2) hours. <u>Id</u>. In 1993, Andrews worked for the town for ten months, worked a total of 173 on-call shifts, and was called-in 28 times. <u>Id</u>. In 1994,

11

Andrews worked for the town the entire year, worked a total of 209 on-call shifts, and was called-in 48 times.  Id.   Andrews was called-in during 16.18% of his on-call shifts in 1993 and 22.96% of his on-call shifts in 1994.  Id.  In Andrews, the court decided that "it is clear that Plaintiff's on-call time was predominantly for his personal benefit."  Id. at 1332.

**Gilligan, Armitage, Boehm, & Norton Facts**

In Gilligan, both plaintiffs were employed by the city in the water and sewer departments.  Gilligan, 986 F.2d at 411.  The facts were slightly different for the two plaintiffs.  Both were required to stay within the limits of a pager or leave a telephone number where they could be reached.  Id.  Gilligan was required to respond within one hour; Hardesty was required to respond within thirty minutes.  Id.  Neither were allowed to consume alcohol while on-call.  Id.  Both were subject to discipline if they did not respond to a page.  Id.  Gilligan was allowed to trade on-call time with other employees.  Id.

The Tenth Circuit held that "under the facts of this case, plaintiffs' personal pursuits were not restricted to such a degree as to require that plaintiffs' on-call time be compensated as overtime under the FLSA."  Id. at 413.  The Tenth Circuit stated that the facts in Gilligan were not like those in Renfro, but instead like those in Armitage, Boehm, and Norton.  "In each of those cases, as in the case before us, restrictions on the employee's on-call time were not so burdensome as to render it time predominantly spent for the benefit of the employer."  Id. at 412.

In Armitage, police detectives "were allowed to do as they pleased while on-call, as long as they remained sober, could be reached by beeper and were able to report to duty within twenty minutes of responding to the page."  Id. at 412-13 (quoting Armitage, 982 F.2d at 432).  "In addition, the detectives were called-in on average less than two times a week."  Id. at 413.

12

In Boehm, "the plaintiffs were free to leave the company premises and to use their on-call time as they pleased, so long as they could be reached and report for work one-third of the time they were called. Id. (citing Boehm, 868 F.2d at 1185). "Similarly, the employees in Norton were not required to remain on the employer's premises, but were allowed to pursue personal activities, with the restriction that they be accessible by phone or pager. Id. (citing Norton, 839 F.2d at 655-66.

In all of these cases, the Tenth Circuit found that their on-call time was not spent predominantly for the benefit of the employer. The on-call time was not compensable under the FLSA. The case now before this court is more analogous to Andrews, Gilligan, Armitage, Boehm, & Norton.

**Facts of This Case**

The Call-In Policy in this case requires Plaintiffs to participate in a rotation of wearing pagers and being on-call outside their normal work hours. Plaintiffs were, in fact, placed on a call-in rotation. The Policy provides that a Voluntary List will be maintained and that mechanics on the Voluntary List will be called first, followed by mechanic A and then B on the on-call list.

When on-call, if paged, under the Policy, Plaintiffs are required to call within thirty (30) minutes of receiving a page and then to proceed to the plant "within a reasonable time." Other than these time restraints on calling-in and reporting to work, the Policy does not place any other restraints on the mechanics on-call, such as prohibiting them from consuming alcohol while on-call.[9] The Policy also does not require Plaintiffs to remain clean or uniformed while on-call or to

---

[9]The plaintiffs in Andrews and Gilligan were not allowed to consume alcohol while on-call, and the plaintiffs in Armitage were required to remain sober while on call, yet in each of

13

even return to work in their uniform when called-in.

The Policy allows Plaintiffs to trade their on-call time and also allows for emergencies. The Policy further provides that "[i]n cases of personnel shortages, no mechanic will be scheduled for coverage more frequently than every third week." The highest number of pages any of the Plaintiffs received in one year was twelve (12). Plaintiffs themselves testified that they did not receive an "overwhelming" number of pages. None of the Plaintiffs were ever disciplined under the Call-In Policy. After receiving a page, Plaintiffs returned to the plant up to one and two hours later and considered that reasonable.[10] CP Kelco must have considered it reasonable as well, since none of the Plaintiffs were ever disciplined for taking too long to return to the plant.

Plaintiffs were able to work at their homes, on their gardens, on their farms, and on their cars while on-call. They were also able to hunt, fish, shop, go to church, socialize, watch television, go out to eat with their families, and engage in other outside income earning activities such as handy man work or well pumping while on-call. A few of the Plaintiffs chose to remain closer to home while wearing the pager so that they would not have as much inconvenience if they were paged, but that was not mandatory, nor even encouraged, under the Call-In Policy.

While at work, Plaintiffs performed various mechanical repairs for CP Kelco as requested. While on-call, Plaintiffs engaged in personal pursuits of their own choice. Plaintiffs were not required to perform any duties for CP Kelco while on-call unless they were actually called-in.

---

those cases, the on-call time was not compensable under the FLSA.

[10]The Call-In Policy here is clearly more lax on reporting time than the policies in Andrews, Gilligan or Armitage.

14

Clearly, the call-in burden on Plaintiffs did not interfere excessively with their personal pursuits. None of the Plaintiffs received a large number of calls. The response time was very lax. When Plaintiffs were on-call, their time was spent not just predominantly, but entirely for their own benefit with the minimal inconvenience of remaining within a "reasonable" travel distance to work. "Reasonable" has included up to two hours.

This case is clearly more akin to those cases in which the Tenth Circuit stated that the on-call time was not spent predominantly for the benefit of the employer and thus, not compensable under the FLSA. The frequency of pages in this case is nowhere near that of the call-backs in Renfro or the alarms in Pabst.

The court has considered the factors listed in Pabst as to each Plaintiff and finds that each of Plaintiffs' on-call time under the Call-In Policy is not compensable under the FLSA.

**CONCLUSION**

The court has considered the factors listed in Pabst as to each Plaintiff and finds that the time Plaintiffs spent wearing the pagers under the Call-In Policy is not compensable "work" under the FLSA. Accordingly, the motion for summary judgment [Docket No. 52] is hereby GRANTED.[11] CP Kelco's motions in limine [Docket Nos. 54 and 55], CP Kelco's motion to deem its motion for summary judgment confessed [Docket No. 58], and Plaintiffs' motion to extend the deadlines of the scheduling order [Docket No. 62], therefore, are MOOT. For the same reasons CP Kelco's summary judgment is granted, Plaintiffs' motion for summary

---

[11]Since the court is granting the motion in its entirety, the court will not address CP Kelco's statute of limitations argument for partial summary judgment. The court notes, however, that it agrees that CP Kelco has shown that it did not act with reckless disregard for the matter of whether the Call-In Policy was prohibited by the FLSA.

judgment [Docket No. 68] is DENIED.

    IT IS SO ORDERED this 15th day of October, 2010.

                                         Ronald A. White
                                         United States District Judge
                                         Eastern District of Oklahoma